THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CRAIG M. McKENNA, Defendant-Appellant.

Second District    No. 2—01—0301

Opinion filed March 14, 2002.

John R. Wieser, of Law Office of Robert J. Schillerstrom, Ltd., of Naperville, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Craig M. McKenna, appeals from an order of the circuit court of Du Page County denying his petition to rescind the statutory summary suspension of his driving privileges under section 11—501.1 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501.1 (West 2000)). Defendant argues that the trial court erred in sustaining the suspension based on the criteria of section 11—501.8 of the Code (625 ILCS 5/11—501.8 (West 2000)). We reverse and remand.

On December 23, 2000, defendant was arrested for driving under the influence (DUI) (625 ILCS 5/11—501(a)(2) (West 2000)) after he was observed operating a vehicle in an erratic manner at a stop sign. Defendant was 19 years old at the time of his arrest. He was also charged with unlawful possession of fraudulent identification (235 ILCS 5/6—16(a) (West 2000)), unlawful use of a license or permit (625 ILCS 5/6—301(a)(3) (West 2000)), unlawful possession of alcohol by a minor (235 ILCS 5/616(a) (West 2000)), having no front registration plate (625 ILCS 5/3—413(a) (West 2000)), and having only one red tail lamp (625 ILCS 5/12—201(b) (West 2000)).

The arresting officer submitted a sworn report to the circuit court and the Secretary of State pursuant to section 11—501.1(d) of the Code (625 ILCS 5/11—501.1(d) (West 2000)) stating that (1) the officer requested that defendant submit to chemical testing to determine the alcohol content of defendant's blood and warned defendant of the applicable consequences under section 11—501.1; and (2) defendant

refused or failed to complete the requested chemical testing. Defendant was warned by means of a preprinted form providing, in pertinent part:

"[Y]ou are warned:

1. If you refuse or fail to complete all chemical tests requested and:

If you are a first offender, your driving privileges will be suspended for a minimum of 6 months; or

If you are not a first offender, your driving privileges will be suspended for a minimum of 3 years.

2. If you submit to a chemical test(s) disclosing an alcohol concentration of 0.08 or more *** and:

If you are a first offender, your driving privileges will be suspended for a minimum of 3 months; or

If you are not a first offender, your driving privileges will be suspended for a minimum of one year.

MOTORIST UNDER AGE 21

You are further warned that as a motorist under age 21 if you submit to chemical test(s) disclosing an alcohol concentration greater than 0.00 and less than 0.08 your driving privileges will be suspended as provided under Sections 6—208.2 and 11—501.8 of the Illinois Vehicle Code.

As provided in Section 6—208.2, you are a first offender unless you have had a previous suspension under Section 11—501.8 ***.

• If you are a first offender, your driving privileges will be suspended for a minimum of 3 months; or

• If you are not a first offender, your driving privileges will be suspended for a minimum of one year." (Emphasis in original.)

The Secretary of State mailed defendant a notice confirming the statutory summary suspension of his driving privileges pursuant to section 11—501.1 of the Code, commonly known as the "implied consent law," for a six-month period beginning February 7, 2001. On January 25, 2001, defendant filed a petition and request for a hearing to rescind the suspension. At the hearing, the arresting officer testified that he observed defendant stopped at a stop sign on Chestnut Street in Hinsdale. Defendant began to make a left turn onto Monroe Street and then stopped to allow traffic on Monroe to pass, at which point the officer stopped defendant. The officer testified that he detected the odor of alcohol when defendant first rolled down his window. The officer further testified that defendant's speech was slurred and he failed various field sobriety tests. Defendant contradicted portions of the officer's testimony concerning the field sobriety tests and other details of the traffic stop. The roadside encounter was videotaped, and the tape was played at the hearing and admitted into

evidence. However, the tape has not been included in the record on appeal.

At the close of defendant's evidence, the State moved for the trial court to find in its favor under section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 2000)). The State argued, *inter alia*, that the arresting officer had probable cause to arrest defendant for the consumption of alcohol by a minor. The trial court granted the State's motion and denied defendant's petition. The court made no finding whether the arresting officer had probable cause to believe that defendant had been driving under the influence of alcohol. Defendant moved to reconsider. In denying the motion, the trial court explained that because defendant was under the age of 21, his driving privileges were subject to suspension under section 11—501.8 of the Code (625 ILCS 5/11—501.8 (West 2000)), commonly known as the "zero tolerance law," which only requires that the arresting officer have probable cause to believe that the driver has consumed *any amount* of an alcoholic beverage.

Defendant argues that because the arresting officer warned him in accordance with the implied consent law and the Secretary of State confirmed the suspension of his driving privileges on that basis, the trial court erred in sustaining the suspension under the zero tolerance law. Defendant contends that in reviewing the suspension the trial court should have considered not merely whether there was probable cause to believe that defendant had consumed alcohol but whether there was probable cause to believe that he was driving under the influence of alcohol.

■ The implied consent law provides in pertinent part:

"Any person who drives or is in actual physical control of a motor vehicle *** shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds or any combination thereof in the person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for [DUI]." 625 ILCS 5/11—501.1(a) (West 2000).

■ A person requested to submit to testing must be warned, *inter alia*, that if he refuses to submit to testing, or submits to testing that discloses an alcohol concentration of 0.08 or greater, a statutory summary suspension of his driving privileges will be imposed. 625 ILCS 5/11—501.1(c) (West 2000). If the person refuses to submit to testing or submits to testing that discloses an alcohol concentration above the legal limit, the officer shall immediately submit a sworn report to the Secretary of State, and upon receipt of the sworn report, the Secretary

of State shall enter the statutory summary suspension and confirm it by mailing notice to the driver and to the court of venue. 625 ILCS 5/11—501.1(d), (e), (h) (West 2000). In addition, the officer who requests the test must serve immediate notice of the statutory summary suspension on the driver; the suspension takes effect on the forty-sixth day following the date notice was given. 625 ILCS 5/11—501.1(f), (g) (West 2000). The length of the statutory summary suspension depends on whether the driver is a "first offender" as defined in section 11—500 of the Code (see 625 ILCS 5/11—500 (West 2000)) and whether he or she submitted to testing. See 625 ILCS 5/6—208.1(a) (West 2000).

■ A broader suspension scheme applies to drivers under the age of 21 who are suspected of having consumed alcohol. The zero tolerance law provides that a driver under the age of 21 is deemed to consent to chemical testing of blood-alcohol content if arrested for *any* violation of the Code or a similar provision of a local ordinance and if, in addition, the arresting officer has probable cause to believe that the driver has consumed *any amount* of an alcoholic beverage. 625 ILCS 5/11—501.8(a) (West 2000). Suspensions are imposed on those who refuse testing or who submit to testing that discloses an alcohol concentration greater than 0.00. 625 ILCS 5/11—501.8(a) (West 2000). The length of the suspension depends on whether the driver submits to testing and whether he or she has previously been suspended under the zero tolerance law. 625 ILCS 5/6—208.2(a) (West 2000).

Here, the record establishes that the arresting officer read the applicable warnings under the implied consent law to defendant. Defendant contends that these warnings did not fully conform to the warnings required under the zero tolerance law, and, accordingly, the suspension of his driving privileges cannot be upheld under that enactment. We note, however, that in *People v. Johnson*, 197 Ill. 2d 478, 489 (2001), our supreme court held that, in reviewing a petition for rescission based on inaccurate warnings, courts must determine whether the motorist is a member of the group affected by the inaccuracy. *Johnson* held that an inaccurate warning concerning the length of the statutory summary suspension for nonfirst offenders was not a basis for rescinding the suspension of a motorist who was a first offender.

Defendant was warned that if he was a first offender and he refused to submit to chemical testing, his driving privileges would be summarily suspended under the implied consent law for a period of six months. Although he was not specifically warned of the consequences of refusing testing under the zero tolerance law, the consequences are identical for motorists whose driving privileges have not previously been suspended under the zero tolerance law. Because it is

undisputed that defendant had no previous suspensions under the zero tolerance law, he was accurately warned of the consequences that he personally faced. Furthermore, the warnings under the implied consent law include an admonition concerning the consequences of submitting to testing under the zero tolerance law. Accordingly, defendant was warned about every aspect of the zero tolerance law *except* the length of the suspension for motorists whose driving privileges have previously been suspended under the zero tolerance law and who refuse testing. Defendant is not a member of this class of motorists, so under *Johnson* the warnings given to defendant were adequate notwithstanding this omission.

Although the warnings defendant received were sufficient under the zero tolerance law, we agree with defendant that the trial court should have confined its inquiry to the criteria governing suspensions under the implied consent law. The officer who arrested defendant submitted a sworn report pursuant to the implied consent law and the Secretary of State confirmed the suspension under the implied consent law. The State argues, without citation of authority, that defendant had "no vested right to have the hearing proceed under one particular provision over the other." While we express no view on whether the right at issue is "vested," we otherwise disagree with this proposition.

■ The State envisions the rescission hearing as a plenary proceeding to determine whether there is any basis to suspend a defendant's driving privileges. However, the implied consent law and the zero tolerance law are independent statutory schemes with distinct hearing provisions involving different issues raised in different forums. Both the implied consent law and the zero tolerance law afford the affected driver the right to request a hearing to review the suspension. The implied consent law provides for a judicial hearing, ordinarily limited to specified issues, in the circuit court of venue. 625 ILCS 5/2—118.1(b) (West 2000). In contrast, however, the zero tolerance law provides that "[a] driver may contest this driver's license sanction by requesting an administrative hearing with the Secretary of State." 625 ILCS 5/11—501.8(e) (West 2000). The action of the Secretary of State in suspending a license under the zero tolerance law is subject to judicial review under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)), but only in the circuit courts of Sangamon County and Cook County. 625 ILCS 5/11—501.8(h) (West 2000). Moreover, suspensions under the implied consent law and the zero tolerance law are not mutually exclusive. We have recognized that a driver's privileges may be suspended under both schemes. *People v. Delcorse*, 305 Ill. App. 3d 76, 79 (1999). Assuming, *arguendo*, that that is what occurred here (see *Delcorse*, 305 Ill. App. 3d at 79), each form of suspension must still be reviewed independently in the proper forum.

■ The trial court had the statutory authority only to review a suspension arising from the implied consent law. 625 ILCS 5/2—118.1(b) (West 2000). The scope of a judicial hearing under the implied consent law is primarily limited to the four issues set forth in section 2—118.1(b) of the Code: (1) whether the person was placed under arrest for DUI; (2) whether the arresting officer had probable cause to believe that the person was driving while under the influence; (3) whether the person refused to take a chemical test; and (4) whether the person failed a test to which that person submitted. 625 ILCS 5/2—118.1(b) (West 2000); see *People v. Dvorak*, 276 Ill. App. 3d 544, 552 (1995). The driver may also raise another issue "if it concerns a mandatory provision *that the summary suspension is predicated upon.*" (Emphasis added.) *People v. Tomlinson*, 295 Ill. App. 3d 193, 197 (1998). For example, a driver may challenge the validity of chemical test results (*People v. Hamilton*, 118 Ill. 2d 153, 160 (1987)), but may not raise a law enforcement agency's failure to comply with the implied consent law's directive to designate the.type of test to be administered (*Tomlinson*, 295 Ill. App. 3d at 197-98).

The evenhanded application of the statute dictates that, like the driver, the State should not be permitted to inject other issues into the hearing. There is no provision in section 2—118.1 permitting the circuit court to consider whether the defendant's driving privileges are subject to suspension under the zero tolerance law. Similarly, by definition, a hearing under section 2—118.1 concerns a statutory summary suspension predicated upon *the implied consent law*; therefore, the hypothetical applicability of the zero tolerance law is not an issue that "concerns a mandatory provision that the summary suspension is *predicated upon.*" (Emphasis added.) *Tomlinson*, 295 Ill. App. 3d at 197.

■ The State notes that the zero tolerance law sets forth different issues to be determined in a hearing to review a suspension. Those issues are whether the arresting officer had probable cause to believe that one in actual physical control of a motor vehicle violated *any* provision of the Code or a similar provision of a local ordinance; whether a Uniform Traffic Ticket was issued; whether the officer had probable cause to believe that the driver had consumed *any* amount of an alcoholic beverage; whether, after being properly warned, the driver refused to submit to or complete testing to determine alcohol concentration, or submitted to testing disclosing an alcohol concentration of more than 0.00; and whether a test result showing an alcohol concentration of more than 0.00 was based on the person's consumption of alcohol in connection with a religious service or ceremony or through the ingestion of a prescribed or recommended dosage of

medicine. 625 ILCS 5/11—501.8(e) (West 2000). As previously noted, however, hearings concerning zero tolerance suspensions take place before the Secretary of State, not the circuit court. Thus the zero tolerance law does not expand the scope of the issues properly before the court in a *judicial* rescission hearing pursuant to the implied consent law.

The trial court's "mix and match" approach is also unfair to defendant because suspensions under the implied consent law have potentially harsher consequences than those under the zero tolerance law. Nonfirst offenders under the implied consent law face longer suspensions than first offenders. First offender status is determined, in part, with reference to previous suspensions *under the implied consent law*. See 625 ILCS 5/11—500 (West 2000) (" 'first offender' shall mean *** any person who has not had a driver's license suspension for violating Section 11—501.1 within 5 years prior to the date of the current offense"). In contrast, suspensions under the zero tolerance law affect the length of future suspensions under that statute (625 ILCS 5/6—208.2(a) (West 2000)) but do not affect the driver's status as a first offender for purposes of the implied consent law.

■ Here, the trial court erred by applying the criteria of the zero tolerance law in granting the State's motion under section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 2000)). Accordingly, we reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings. On remand, the circuit court is directed to reconsider the State's section 2—1110 motion in light of the criteria under the implied consent law set forth in section 2—118.1(b) of the Code (625 ILCS 5/2—118.1(b) (West 2000)).

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

BOWMAN and BYRNE, JJ., concur.