No. 2--01--0301
________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 SECOND DISTRICT
________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court
OF ILLINOIS, ) of Du Page County.
 )
 Plaintiff-Appellee, )
 )
v. ) No. 00--DT--5690
 )
CRAIG M. McKENNA, ) Honorable
 ) Joseph S. Bongiorno,
 Defendant-Appellant. ) Judge, Presiding.
________________________________________________________________

 JUSTICE McLAREN delivered the opinion of the court:
 Defendant, Craig M. McKenna, appeals from an order of the circuit
court of Du Page County denying his petition to rescind the statutory
summary suspension of his driving privileges under section 11--501.1 of the
Illinois Vehicle Code (Code) (625 ILCS 5/11--501.1 (West 2000)). Defendant
argues that the trial court erred in sustaining the suspension based on the
criteria of section 11--501.8 of the Code (625 ILCS 5/11--501.8 (West
2000)). We reverse and remand.
 On December 23, 2000, defendant was arrested for driving under the
influence (DUI) (625 ILCS 5/11--501(a)(2) (West 2000)) after he was
observed operating a vehicle in an erratic manner at a stop sign.
Defendant was 19 years old at the time of his arrest. He was also charged
with unlawful possession of fraudulent identification (235 ILCS 5/6--16(a)
(West 2000)), unlawful use of license or permit (625 ILCS 5/6--301(a)(3)
(West 2000)), unlawful possession of alcohol by a minor (235 ILCS 5/616(a)
(West 2000)), having no front registration plate (625 ILCS 5/3--413(a)
(West 2000)), and having only one red tail lamp (625 ILCS 5/12--201(b)
(West 2000)).
 The arresting officer submitted a sworn report to the circuit court
and the Secretary of State pursuant to section 11--501.1(d) of the Code
(625 ILCS 5/11--501.1(d) (West 2000)) stating that (1) the officer
requested that defendant submit to chemical testing to determine the
alcohol content of defendant's blood and warned defendant of the applicable
consequences under section 11--501.1; and (2) defendant refused or failed
to complete the requested chemical testing. Defendant was warned by means
of a preprinted form providing, in pertinent part:
 "[Y]ou are warned:
 1. If you refuse or fail to complete all chemical tests
 requested and:
 If you are a first offender, your driving privileges
 will be suspended for a minimum of 6 months; or
 If you are not a first offender, your driving
 privileges will be suspended for a minimum of 3 years.
 2. If you submit to a chemical test(s) disclosing an
 alcohol concentration of 0.08 or more *** and:
 If you are a first offender, your driving privileges
 will be suspended for a minimum of 3 months; or
 If you are not a first offender, your driving
 privileges will be suspended for a minimum of one year.
 MOTORIST UNDER AGE 21
 You are further warned that as a motorist under age 21 if you
 submit to chemical test(s) disclosing an alcohol concentration greater
 than 0.00 and less than 0.08 your driving privileges will be suspended
 as provided under Sections 6--208.2 and 11--501.8 of the Illinois
 Vehicle Code.
 As provided in Section 6--208.2, you are a first offender unless
 you have had a previous suspension under Section 11--501.8 ***.
 ! If you are a first offender, your driving
 privileges will be suspended for a minimum of 3
 months; or
 ! If you are not a first offender, your
 driving privileges will be suspended for a minimum of
 one year."
 The Secretary of State mailed defendant a notice confirming the
statutory summary suspension of his driving privileges pursuant to section
11--501.1 of the Code, commonly known as the "implied consent law," for a
six-month period beginning February 7, 2001. On January 25, 2001,
defendant filed a petition and request for a hearing to rescind the
suspension. At the hearing, the arresting officer testified that he
observed defendant stopped at a stop sign on Chestnut Street in Hinsdale.
Defendant began to make a left turn onto Monroe Street and then stopped to
allow traffic on Monroe to pass, at which point the officer stopped
defendant. The officer testified that he detected the odor of alcohol when
defendant first rolled down his window. The officer further testified that
defendant's speech was slurred and he failed various field sobriety tests.
Defendant contradicted portions of the officer's testimony concerning the
field sobriety tests and other details of the traffic stop. The roadside
encounter was videotaped, and the tape was played at the hearing and
admitted into evidence. However, the tape has not been included in the
record on appeal.
 At the close of defendant's evidence, the State moved for the trial
court to find in its favor under section 2--1110 of the Code of Civil
Procedure (735 ILCS 5/2--1110 (West 2000)). The State argued, inter alia,
that the arresting officer had probable cause to arrest defendant for the
consumption of alcohol by a minor. The trial court granted the State's
motion and denied defendant's petition. The court made no finding whether
the arresting officer had probable cause to believe that defendant had been
driving under the influence of alcohol. Defendant moved to reconsider. In
denying the motion, the trial court explained that because defendant was
under the age of 21, his driving privileges were subject to suspension
under section 11--501.8 of the Code (625 ILCS 5/11--501.8 (West 2000)),
commonly known as the "zero tolerance law," which only requires that the
arresting officer have probable cause to believe that the driver has
consumed any amount of an alcoholic beverage.
 Defendant argues that because the arresting officer warned him in
accordance with the implied consent law and the Secretary of State
confirmed the suspension of his driving privileges on that basis, the trial
court erred in sustaining the suspension under the zero tolerance law.
Defendant contends that in reviewing the suspension the trial court should
have considered not merely whether there was probable cause to believe that
defendant had consumed alcohol but whether there was probable cause to
believe that he was driving under the influence of alcohol.
 The implied consent law provides in pertinent part:
 "Any person who drives or is in actual physical control of a
 motor vehicle *** shall be deemed to have given consent *** to a
 chemical test or tests of blood, breath, or urine for the purpose of
 determining the content of alcohol, other drug or drugs, or
 intoxicating compound or compounds or any combination thereof in the
 person's blood if arrested, as evidenced by the issuance of a Uniform
 Traffic Ticket, for [DUI]." 625 ILCS 5/11--501.1(a) (West 2000).
 A person requested to submit to testing must be warned, inter alia,
that if he refuses to submit to testing, or submits to testing that
discloses an alcohol concentration of 0.08 or greater, a statutory summary
suspension of his driving privileges will be imposed. 625 ILCS 5/11--
501.1(c) (West 2000). If the person refuses to submit to testing or
submits to testing that discloses an alcohol concentration above the legal
limit, the officer shall immediately submit a sworn report to the Secretary
of State, and upon receipt of the sworn report, the Secretary of State
shall enter the statutory summary suspension and confirm it by mailing
notice to the driver and to the court of venue. 625 ILCS 5/11--
501.1(d),(e),(h) (West 2000). In addition, the officer who requests the
test must serve immediate notice of the statutory summary suspension on the
driver; the suspension takes effect on the 46th day following the date
notice was given. 625 ILCS 5/11--501.1(f),(g) (West 2000). The length of
the statutory summary suspension depends on whether the driver is a "first
offender" as defined in section 11--500 of the Code (see 625 ILCS 5/11--500
(West 2000)) and whether he or she submitted to testing. See 625 ILCS 5/6--
208.1(a) (West 2000).
 A broader suspension scheme applies to drivers under the age of 21
who are suspected of having consumed alcohol. The zero tolerance law
provides that a driver under the age of 21 is deemed to consent to chemical
testing of blood alcohol content if arrested for any violation of the Code
or a similar provision of a local ordinance and if, in addition, the
arresting officer has probable cause to believe that the driver has
consumed any amount of an alcoholic beverage. 625 ILCS 5/11--501.8(a)
(West 2000). Suspensions are imposed on those who refuse testing or who
submit to testing that discloses an alcohol concentration greater than
0.00. 625 ILCS 5/11--501.8(a) (West 2000). The length of the suspension
depends on whether the driver submits to testing and whether he or she has
previously been suspended under the zero tolerance law. 625 ILCS 5/6--
208.2(a) (West 2000).
 Here, the record establishes that the arresting officer read the
applicable warnings under the implied consent law to defendant. Defendant
contends that these warnings did not fully conform to the warnings required
under the zero tolerance law, and, accordingly, the suspension of his
driving privileges cannot be upheld under that enactment. We note,
however, that in People v. Johnson, 197 Ill. 2d 478, 489 (2001), our
supreme court held that, in reviewing a petition for rescission based on
inaccurate warnings, courts must determine whether the motorist is a member
of the group affected by the inaccuracy. Johnson held that an inaccurate
warning concerning the length of the statutory summary suspension for
nonfirst offenders was not a basis for rescinding the suspension of a
motorist who was a first offender.
 Defendant was warned that if he was a first offender and he refused
to submit to chemical testing, his driving privileges would be summarily
suspended under the implied consent law for a period of six months.
Although he was not specifically warned of the consequences of refusing
testing under the zero tolerance law, the consequences are identical for
motorists whose driving privileges have not previously been suspended under
the zero tolerance law. Because it is undisputed that defendant had no
previous suspensions under the zero tolerance law, he was accurately warned
of the consequences that he personally faced. Furthermore, the warnings
under the implied consent law include an admonition concerning the
consequences of submitting to testing under the zero tolerance law.
Accordingly, defendant was warned about every aspect of the zero tolerance
law except the length of the suspension for motorists whose driving
privileges have previously been suspended under the zero tolerance law and
who refuse testing. Defendant is not a member of this class of motorists,
so under Johnson the warnings given to defendant were adequate
notwithstanding this omission.
 Although the warnings defendant received were sufficient under the
zero tolerance law, we agree with defendant that the trial court should
have confined its inquiry to the criteria governing suspensions under the
implied consent law. The officer who arrested defendant submitted a sworn
report pursuant to the implied consent law and the Secretary of State
confirmed the suspension under the implied consent law. The State argues,
without citation of authority, that defendant had "no vested right to have
the hearing proceed under one particular provision over the other." While
we express no view on whether the right at issue is "vested," we otherwise
disagree with this proposition.
 The State envisions the rescission hearing as a plenary proceeding to
determine whether there is any basis to suspend a defendant's driving
privileges. However, the implied consent law and the zero tolerance law
are independent statutory schemes with distinct hearing provisions
involving different issues raised in different forums. Both the implied
consent law and the zero tolerance law afford the affected driver the right
to request a hearing to review the suspension. The implied consent law
provides for a judicial hearing, ordinarily limited to specified issues, in
the circuit court of venue. 625 ILCS 5/2--118.1(b) (West 2000). In
contrast, however, the zero tolerance law provides that "[a] driver may
contest this driver's license sanction by requesting an administrative
hearing with the Secretary of State." 625 ILCS 5/11--501.8(e) (West 2000).
 The action of the Secretary of State in suspending a license under the
zero tolerance law is subject to judicial review under the Administrative
Review Law (735 ILCS 5/3--101 et seq. (West 2000)), but only in the circuit
courts of Sangamon County and Cook County. 625 ILCS 5/11--501.8(h) (West
2000). Moreover, suspensions under the implied consent law and the zero
tolerance law are not mutually exclusive. We have recognized that a
driver's privileges may be suspended under both schemes. People v.
Delcorse, 305 Ill. App. 3d 76, 79 (1999). Assuming, arguendo, that that is
what occurred here (see Delcorse, 305 Ill. App. 3d at 79), each form of
suspension must still be reviewed independently in the proper forum.
 The trial court had the statutory authority only to review a
suspension arising from the implied consent law. 625 ILCS 5/2--118.1(b)
(West 2000). The scope of a judicial hearing under the implied consent law
is primarily limited to the four issues set forth in section 2--118.1(b) of
the Code: (1) whether the person was placed under arrest for DUI; (2)
whether the arresting officer had probable cause to believe that the person
was driving while under the influence; (3) whether the person refused to
take a chemical test; and (4) whether the person failed a test to which
that person submitted. 625 ILCS 5/2--118.1(b) (West 2000); see People v.
Dvorak, 276 Ill. App. 3d 544, 552 (1995). The driver may also raise
another issue "if it concerns a mandatory provision that the summary
suspension is predicated upon." (Emphasis added.) People v. Tomlinson,
295 Ill. App. 3d 193, 197 (1998). For example, a driver may challenge the
validity of chemical test results (People v. Hamilton, 118 Ill. 2d 153, 160
(1987)), but may not raise a law enforcement agency's failure to comply
with the implied consent law's directive to designate the type of test to
be administered (Tomlinson, 295 Ill. App. 3d at 197-98).
 The evenhanded application of the statute dictates that, like the
driver, the State should not be permitted to inject other issues into the
hearing. There is no provision in section 2--118.1 permitting the circuit
court to consider whether the defendant's driving privileges are subject to
suspension under the zero tolerance law. Similarly, by definition, a
hearing under section 2--118.1 concerns a statutory summary suspension
predicated upon the implied consent law; therefore the hypothetical
applicability of the zero tolerance law is not an issue that "concerns a
mandatory provision that the summary suspension is predicated upon."
(Emphasis added.) Tomlinson, 295 Ill. App. 3d at 197.
 The State notes that the zero tolerance law sets forth different
issues to be determined in a hearing to review a suspension. Those issues
are whether the arresting officer had probable cause to believe that one in
actual physical control of a motor vehicle violated any provision of the
Code or a similar provision of a local ordinance; whether a Uniform Traffic
Ticket was issued; whether the officer had probable cause to believe that
the driver had consumed any amount of an alcoholic beverage; whether, after
being properly warned, the driver refused to submit to or complete testing
to determine alcohol concentration, or submitted to testing disclosing an
alcohol concentration of more than 0.00; and whether a test result showing
an alcohol concentration of more than 0.00 was based on the person's
consumption of alcohol in connection with a religious service or ceremony
or through the ingestion of a prescribed or recommended dosage of medicine.
 625 ILCS 5/11--501.8(e) (West 2000). As previously noted however,
hearings concerning zero tolerance suspensions take place before the
Secretary of State, not the circuit court. Thus the zero tolerance law
does not expand the scope of the issues properly before the court in a
judicial rescission hearing pursuant to the implied consent law.
 The trial court's "mix and match" approach is also unfair to
defendant because suspensions under the implied consent law have
potentially harsher consequences than those under the zero tolerance law.
Nonfirst offenders under the implied consent law face longer suspensions
than first offenders. First offender status is determined, in part, with
reference to previous suspensions under the implied consent law. See 625
ILCS 5/11--500 (West 2000) (" 'first offender' shall mean *** any person
who has not had a driver's license suspension for violating Section 11--
501.1 within 5 years prior to the date of the current offense") In
contrast, suspensions under the zero tolerance law affect the length of
future suspensions under that statute (625 ILCS 5/6--208.2(a) (West 2000)),
but do not affect the driver's status as a first offender for purposes of
the implied consent law.
 Here, the trial court erred by applying the criteria of the zero
tolerance law in granting the State's motion under section 2--1110 of the
Code of Civil Procedure (735 ILCS 5/2-1110 (West 2000)). Accordingly, we
reverse the judgment of the circuit court of Du Page County and remand the
cause for further proceedings. On remand, the circuit court is directed to
reconsider the State's section 2--1110 motion in light of the criteria
under the implied consent law set forth in section 2--118.1(b) of the Code
(625 ILCS 5/2--118.1(b) (West 2000)).
 For the foregoing reasons, the judgment of the circuit court of Du
Page County is reversed, and the cause is remanded for further proceedings
consistent with this opinion.
 Reversed and remanded with directions.
 BOWMAN and BYRNE, JJ., concur.